IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM GIPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:19cv224-MHT |
| | ) | (WO) |
| HYUNDAI POWER TRANSFORMERS | ) | |
| USA, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | | |
| WILLIAM GIPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:17cv498-MHT |
| | ) | (WO) |
| HYUNDAI POWER TRANSFORMERS | ) | |
| USA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

*GIPSON II* OPINION AND ORDER

This litigation consists of two consolidated cases:

*Gipson I* (*Gipson v. Hyundai Power Transformers USA,
Inc.*, civil action no. 2:17cv498-MHT); and *Gipson II*
(*Gipson v. Hyundai Power Transformers USA, Inc.*, civil
action no. 2:19cv224-MHT).

Only the *Gipson II* case is now before the court. The plaintiff is William Gipson. The defendants are Gipson's employer Hyundai Power Transformers USA, Inc. and Hyundai employees Clayton Payne, Tony Wojciechowski, and Ted Arkuszeski. Gipson has brought *Gipson II* pursuant to three statutes: Title VII (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 1981a and 2000e through 2000e-17); § 1981 (the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981); and § 1985 (the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1985). This court has jurisdiction under 42 U.S.C. § 2000e-5(f)(3) (Title VII) and 28 U.S.C. §§ 1343(a)(1), (3) (civil rights).

The defendants have filed two motions to dismiss in *Gipson II*. *See* Hyundai Mot. to Dismiss (doc. no. 7 in *Gipson II*); Individual Mot. to Dismiss (doc. no. 9 in *Gipson II*). As explained below, the motions will be granted in part and denied in part.

## I. PROCEDURAL BACKGROUND

*Gipson I* was filed in July 2017, and Gipson asserted five federal claims for racial discrimination and retaliation and four state claims. *See* Complaint (doc. no. 1 in *Gipson I*); *see also Gipson v. Hyundai Power Transformers USA*, Inc., 2019 WL 2932747 (M.D. Ala. 2019) (summarizing this); Opinion and Order (doc. no. 119 in *Gipson I*) (same). The federal claims were brought against only Hyundai, while the state claims were also brought against Payne and Arkuszeski. Wojciechowski was not a defendant in *Gipson I*.

After Gipson voluntarily dismissed his state claims in *Gipson I*, this court dismissed and terminated Payne and Arkuszeski as defendants, *see* Judgment (doc. no. 118 in *Gipson I*), leaving only Hyundai as a defendant. The court subsequently held that four of Gipson's federal claims would go to trial: (1) discriminatory wages; (2) discriminatory failure to promote; (3) discriminatory demotion; and (4) retaliatory demotion.

3

The failure-to-promote claim rested on § 1981 and the other three claims rested on Title VII and § 1981. *See Gipson v. Hyundai Power Transformers USA*, Inc., 2019 WL 2932747 (M.D. Ala. 2019); Opinion and Order (doc. no. 119 in *Gipson I*). The court dismissed the federal claim for harassment in its entirety. *See id*.

*Gipson II* was filed in March 2019. *See* Complaint (doc. no. 1 in *Gipson II*). *Gipson I* and *Gipson II* were consolidated. The proceedings in *Gipson I,* which was ready to go to trial, were stayed until the parties and the court could resolve all pretrial matters in *Gipson II*. *See* Order (doc. no. 134 in *Gipson I*). The defendants have now filed two motions to dismiss in *Gipson II*. *See* Hyundai Mot. to Dismiss (doc. no. 7 in *Gipson II*); Individual Mot. to Dismiss (doc. no. 9 in *Gipson II*).

## II. LEGAL STANDARD

In general, a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint against the legal standard articulated by Rule 8, which provides that the complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. An employment discrimination complaint though "need not

include" specific facts establishing a *prima facie* case of discrimination in order to survive a Rule 12(b)(6) motion. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 (2002).

### III. IDENTIFYING *GIPSON II* CLAIMS

Gipson has been a Hyundai employee since 2011 and currently works as a Winder and Team Leader in the Winding Department. *See* Complaint (doc. no. 1 in *Gipson II*) at 4 ¶ 18. He is supervised by defendant Payne, Senior Supervisor in the Winding Department, and by defendant Arkuszeski, Plant Manager. *See id*. at 4 ¶ 19. Defendant Wojciechowski is the Human Resource Director. *See id*. Gipson is African-American; Payne, Arkuszeski, and Wojciechowski are all Caucasian. *See id*. at 4 ¶ 17 (Gipson); *id.* at 4 ¶ 19 (individual defendants).

Gipson previously filed two EEOC charges alleging race discrimination and retaliation and, as stated, brought *Gipson I* in 2017. *See id*. at 5 ¶ 21; *see also*

6

Exhibit 1 (doc. no. 1-1 in *Gipson II*) at 11-16 (August 2016 charge); Exhibit 2 (doc. no. 1-1 in *Gipson II*) at 18-22 (December 2016 charge). Since then, Gipson alleges, several other Hyundai employees whom he named as witnesses have been fired. *See* Complaint (doc. no. 1 in *Gipson II*) at 7 ¶ 31; *see also id.* at 7-18 ¶¶ 32-76 (detailing firing of these other employees). Further, after a pay raise was awarded in April 2018, Gipson has been paid less than other Caucasian or Korean employees who are in the same department but who have less seniority. *See id.* at 19-20 ¶¶ 83-85 (§ 1981); *id. at* 26-27 ¶¶ 115-117 (Title VII). Gipson also works a split shift, where he rotates between the night shift and the day shift, while Caucasian employees with less seniority have been promoted to the day shift. *See id.* at 20 ¶¶ 86-87 (§ 1981); *id.* at 27 ¶¶ 118-19 (Title VII). Finally, Gipson has been constantly scrutinized in his work environment, cast in a false light by fabricated text

messages, ostracized by co-workers, and subjected to comments that he will be fired and that his protective equipment is being tampered with. *See id.* at 5-6 ¶¶ 23-29 (statement of facts); *id.* at 22 ¶ 93 (§ 1981); *id.* at 29 ¶ 127 (Title VII).

After Gipson filed a third EEOC charge on June 27, 2018, he brought this lawsuit, *Gipson II*. *See* id. at 3-4 ¶ 10; *see also* Complaint Exhibit 1 (doc. no. 1-1 in *Gipson II*) (current EEOC charge). His complaint sets forth the factual allegations, summarized above, in three counts, based on the various statutory bases for his claims. The first and third counts are both labelled "race discrimination, harassment, and retaliation," with the difference being that the first count is brought under § 1981 against all defendants, while the third count is brought under Title VII against only Hyundai. The second count is labeled "civil conspiracy to deprive plaintiff of ... access to

the courts," and is brought against all defendants under § 1985.

This organization makes the *Gipson II* complaint difficult to read. As identified above, the complaint contains four sets of factual allegations, related to (1) termination of other employees; (2) wages; (3) promotion; and (4) work environment, with the allegations related to (2) wages and (3) promotion grouped together because they are related. The complaint, however, repeats these four factual allegations across the three separate counts and does not differentiate which factual allegations support which claims within each count. As a result, the court has had to analyze the distinct factual allegations presented across the various counts and assume, where the allegations are ambiguous, that Gipson intended to state a claim for *both* discrimination and retaliation. For ease of discussion and resolution, the court will refer to these as distinct *claims* rather than the

distinct *counts*.   This approach is different from the one the court took in *Gipson I*.   Nonetheless, for the purposes of *Gipson II*, the court has identified the following 17 claims, with the claims grouped together by factual allegation as follows:

### *Termination-of-Other-Employees Claims*

(1) Denial of access to courts under § 1985;

(2) Retaliatory termination of others under Title VII;

(3) Retaliatory termination of others under § 1981;

(4) Discriminatory termination of others under Title VII; and

(5) Discriminatory termination of others under § 1981.

### *Wage and Promotion Claims*

(6) Discriminatory wages under Title VII;

(7) Discriminatory failure-to-promote under Title VII;

(8) Discriminatory wages under § 1981;

(9) Discriminatory failure-to-promote under § 1981;

(10) Retaliatory wages under Title VII;

(11) Retaliatory failure-to-promote under Title VII;

(12) Retaliatory wages under § 1981; and

(13) Retaliatory failure-to-promote under §1981.

### *Hostile-Work-Environment Claims*

(14) Discriminatory hostile-work environment under Title VII;

(15) Discriminatory hostile-work environment under § 1981;

(16) Retaliatory hostile-work environment under Title VII; and

(17) Retaliatory hostile-work environment under § 1981.

## IV. DISCUSSION OF *GIPSON II* CLAIMS

The court will take the claims related to each set of factual allegations in turn, first describing the facts, accepted as true, and then resolving the relevant portions of the motions to dismiss.

### A. *Termination of Other Employees*

First, the *Gipson II* complaint alleges that other employees whom Gipson had named as witnesses in *Gipson I* were subsequently fired. Based on this, the court identified five distinct *Gipson II* claims: interference with access to the courts (claim 1); retaliatory termination under both Title VII (claim 2) and § 1981 (claim 3); and discriminatory termination under both Title VII (claim 4) and § 1981 (claim 5). For the reasons explained below, all five of these claims will be dismissed.

### 1. Access to Court

To support his denial-of-access claim, Gipson cites the United States Supreme Court's decision in *Christopher v. Harbury*, 536 U.S. 404 (2002). *See* Complaint (doc. no. 1 in *Gipson II*) at 25 ¶ 107; *see also* Pl.'s Response (doc. no. 17 in *Gipson II*) at 13-14. The defendants contend that such reliance is misplaced. *See, e.g.*, Defs.' Reply (doc. no. 21 in *Gipson II*) at 8-10.

In short, *Harbury* describes two categories of claims for denial of access to courts. A claim can be either forward-looking, in the sense that a plaintiff is "frustrate[d] ... in preparing and filing suits at the present time," or backward-looking, in the sense that a claim "cannot now be tried (or tried with all material evidence)." 536 U.S. at 413-14. For both categories of claims, *Harbury* explains that "the underlying cause of action, whether anticipated or

lost, is an element that must be described in the complaint." *Id*. at 415.

The problem is that Gipson does not identify such a cause of action in full--in particular, a lost remedy. In fact, although Gipson claims that he was "injured in his ability to pursue his claims in court," Pl.'s Response (doc. no. 17 in *Gipson II*) at 15, four of his federal claims in *Gipson I* will go to trial, *see Gipson v. Hyundai Power Transformers USA*, Inc., 2019 WL 2932747 (M.D. Ala. 2019); Opinion and Order (doc. no. 119 in *Gipson I*). The only claims that will not go to trial in *Gipson I* are those that Gipson himself abandoned. *See id*. As a result, the *Gipson II* access-to-court claim (claim 1) will be dismissed. Given this, the court does not address the defendants' other arguments in favor of dismissal.

## 2. Retaliatory Termination
## of Other Employees

To support his retaliatory termination-of-other-employees claims, Gipson cites the United States Supreme Court's decision in *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170 (2011). *See* Pl.'s Response (doc. no. 17 in *Gipson II*) at 9-11. The defendants contend that such reliance is misplaced. *See*, *e.g.*, Defs.' Reply (doc. no. 21 in *Gipson II*) at 12-13.

In *Thompson*, the Court had considered whether an employee who was fired could bring a claim for retaliation, based on the theory that the company fired him in order to retaliate against his wife, who was also a company employee and had previously complained of discrimination. *See* 562 U.S. at 172. In short, although the Court "decline[d] to identify a fixed class of relationships for which third-party reprisals are unlawful," the Court allowed the husband's claim to proceed. *Id*. at 175.

In his later briefing, Gipson claims that "[t]he lesson of *Thompson* is that when an employer fires one employee because of protected conduct engaged in by another employee, both employees are aggrieved individuals and can assert claims of retaliation." Pl.'s Response (doc. no. 17 in *Gipson II*) at 10-11. But the critical difference between the plaintiff in *Thompson* and Gipson is that the *Thompson* plaintiff had been fired, while Gipson has not been fired and "currently works as a Winder and Team Leader." Complaint (doc. no. 1 in *Gipson II*) at 4 ¶ 18. Because he has not been injured by the firing of these third parties, the court agrees with the defendants and will dismiss the retaliatory termination-of-other-employees claims (claims 2 and 3).

### 3. Discriminatory Termination of Other of Employees

The *Gipson II* claims for discriminatory termination of other employees (claims 4 and 5) will be dismissed

for the same reason that the claims for retaliatory termination of other employees will be dismissed: Gipson has not been injured by the termination of third parties.

### B. *Wages and Promotion*

The *Gipson II* complaint alleges that specific Caucasian and Korean employees in the same department are paid more than Gipson and that specific Caucasian employees have been promoted to the day shift over him, even though he has more seniority than each of them. Based on this, the court identified eight distinct wage and promotion claims related to discrimination and retaliation: both discriminatory wages under Title VII (claim 6) and discriminatory failure-to-promote under Title VII (claim 7; both discriminatory wages under § 1981 (claim 8) and discriminatory failure-to-promote (claim 9) under § 1981; both retaliatory wages under Title VII (claim 10) and

retaliatory failure-to-promote under Title VII (claim 11); and both retaliatory wages under § 1981 (claim 12) and retaliatory failure-to-promote under § 1981 (claim 13).

For the reasons that follow, the claims for discriminatory wages and discriminatory failure-to-promote under Title VII (claims 6 and 7) will be dismissed. However, the other wage and promotion claims (claims 8 through 13) will proceed because no defendant moved to dismiss them.

### 1. Racial Discrimination Under Title VII

Hyundai argues that *Gipson II*'s discriminatory wage and discriminatory failure-to-promote claims, to the extent they rest on Title VII, should be dismissed for failure to exhaust administrative remedies. *See* Hyundai Mot. to Dismiss (doc. no. 7 in *Gipson II*) at 17-18.

The Eleventh Circuit Court of Appeals has stated with regard to Title VII claims that a "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory v. Georgia Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (internal quotations).

In this case, Gipson's June 2018 EEOC charge centered on how he "believe[d] that [Hyundai] ha[d] engaged in a pattern of retaliatory behavior to discourage complaints and witnesses that oppose race discrimination in the [Hyundai] workplace." *See* June 2018 EEOC Charge (doc. no. 1-1) at 10. Gipson did not mention any pay raise or any other related issue with wages in the EEOC charge that led to the filing of *Gipson II*. In fact, Gipson mentioned the general issue of wages in only an earlier EEOC charge that led to filing of *Gipson I*. *See* Pl.'s Response (doc. no. 17 in *Gipson II*) at 12 (acknowledging this). Although Gipson

did attach the previous EEOC charge to the new EEOC charge, he did so when describing the history of his employment, not the scope of his new charge. *See* June 2018 EEOC Charge (doc. no. 1-1 in *Gipson II*) at 5 ("I have filed two previous EEOC charges. I filed a charge of race discrimination and retaliation with the EEOC on August 12, 2016. [It] is attached as Exhibit 1."). Thus, the discriminatory wage claim under Title VII (claim 6) would not "reasonably be expected to grow out of the charge of discrimination" and will be dismissed.

Whether Gipson's failure-to-promote claim under Title VII (claim 7) could reasonably grow out of the EEOC charge is more difficult. Gipson did briefly mention racial differences in work schedules in the EEOC charge that led to the filing of *Gipson II*, but he did so while summarizing why a co-worker he had named as a witness was terminated. *See id*. at 8. Further, the issue concerned working weekends or taking time off, not promotion to the day shift. In any case,

regardless of how this question is resolved, the related claim for discriminatory failure-to-promote under § 1981 (claim 9) will proceed, as explained further below. For each of these reasons, the claim for discriminatory failure-to-promote under Title VII (claim 7) will also be dismissed.

## 2. Other Wage and Promotion Claims

Although the defendants asked the court to generally dismiss all claims in the preamble to their motions to dismiss, *see* Hyundai Mot. to Dismiss (doc. no. 7 in *Gipson II*) at 1; Individual. Mot. to Dismiss (doc. no. 9 in *Gipson II*) at 1, the defendants' specific arguments covered only some of the claims set forth by Gipson. The court thus focuses on the actual arguments in favor of dismissal, rather than the broad language in the preamble.

Given this, no defendant moved to dismiss the claims for discriminatory wages and discriminatory

promotion under § 1981 (claims 8 and 9). Instead, the defendants moved to dismiss the claims for discriminatory wages and discriminatory promotion only to the extent they fell under Title VII. See Hyundai Mot. to Dismiss (doc. no. 7 in *Gipson II*) at 4 ("Plaintiff's discrimination claims *under Title VII* ... are also due to be dismissed to the extent they are based on allegations that Plaintiff was treated less favorably than similarly situated comparators." (emphasis added)); Individual Mot. to Dismiss (doc. no. 9 in *Gipson II*) at 4 (same).

Further, no defendant moved to dismiss the claims for retaliatory wages (claims 10 and 12) or the claims for retaliatory failure-to-promote (claims 11 and 13). Instead, the defendants moved to dismiss these retaliation claims with respect to only the termination of other employees. *See* Hyundai Mot. to Dismiss (doc. no. 7 in *Gipson II*) at 4 ("Plaintiff's ... retaliation claims under § 1981 (Count One) and Title VII (Count

Three) are due to be dismissed *to the extent they are based on alleged adverse actions taken against third-parties*." (emphasis added)); Individual Mot. to Dismiss (doc. no. 9 in *Gipson II*) at 4 (same).

### C.   Hostile Work Environment

Finally, the *Gipson II* complaint alleges, among other things, that the individual defendants have scrutinized Gipson's work and "set him up" for safety violations; that two of the individual defendants have fabricated text messages to cast him in a false light; that unspecified managers of his, which the court assumes includes some or all of individual defendants, have commented that Gipson will be fired and that his protective equipment will be tampered with;[1] and that a

_____

1.   At this stage, the court assumes that Gipson includes some or all of the individual defendants when describing actions taken by unspecified "managers," for two reasons.   First, the *Gipson II* complaint itself identifies the defendants as managers.   *See* Complaint (doc. no. 1 in *Gipson II*) at 5 ¶ 23 ("Arkuszeski, Payne and Wojciechowski have also engaged other managers.

person unknown to Gipson may have urinated in his hat. Based on this, the court identified four distinct claims: a discriminatory hostile-work environment under both Title VII (claim 14) and § 1981 (claim 15); and a retaliatory hostile-work environment under both Title VII (claim 16) and § 1981 (claim 17).  For the reasons that follow, the claims for discrimination will be dismissed but the claims for retaliation will proceed.

### 1.  Discriminatory Hostile Work Environment

After filing *Gipson II*, Gipson clarified that he "has not alleged ... a stand-alon[e] hostile-work-environment claim."  Pl.'s Response (doc. no. 17 in *Gipson II*) at 9.  There is no difference

---

...").  Second, the June 2018 EEOC charge that led to the filing of *Gipson II* also identifies the defendants as managers.  *See* EEOC Charge (doc. no. 1-1 in *Gipson II*) at 5 ("I have been subjected to repeated acts of retaliation by Ted Arkuszeski, Plant Manager; Clayton Payne, Senior Supervisor, and Tony Wojciechowski, Senior Human Resource Director. These three managers have also engaged other managers and supervisors to discriminate and retaliate against me.").

between a stand-alone hostile-work-environment claim
and a discriminatory hostile-work-environment claim.
That is because, in order to establish a
hostile-work-environment claim, a plaintiff must show
that, among other things, "he or she belongs to a
protected group" and "that the harassment was based on
a protected characteristic of the employee." *Bryant v.
Jones*, 575 F.3d 1281, 1296 (11th Cir. 2009) (internal
quotations and brackets omitted). The court thus
interprets Gipson's concession as abandoning his
discriminatory hostile-work-environment claims (claims
14 and 15).

## 2. Retaliatory Hostile Work Environment

The defendants argue that Gipson's retaliatory
hostile-work-environment claims (claims 16 and 17)
should be dismissed because he fails to allege some
elements of a prima-facie case of harassment. *See*
Hyundai Mot. to Dismiss (doc. no. 7 in *Gipson II*) at 13

(for both claims 16 and 17); Individual Mot. to Dismiss (doc. no. 9 in *Gipson II*) at 13 (for claim 17).  A plaintiff establishes such a case if he shows that "(1) []he engaged in protected activity; (2) after doing so, []he was subjected to unwelcome harassment; (3) h[is] protected activity was a 'but for' cause of the harassment; (4) the harassment was sufficiently severe or pervasive to alter the terms or conditions of h[is] employment;" and, as is relevant, "(5) a basis exists for holding h[is] employer liable either directly or vicariously." *Swindle v. Jefferson Cty. Comm'n*, 593 F. App'x 919, 929 n.10 (11th Cir. 2014) (*citing Gowski v. Peake,* 682 F.3d 1299, 1311-12 (11th Cir. 2012)).

The defendants argue that Gipson did not allege facts showing the harassment was severe or pervasive, either subjectively or objectively, and did not allege facts showing a basis for liability, either of Hyundai

or the individual defendants.[2]  *See* Hyundai Mot. to Dismiss (doc. no. 7 in *Gipson II*) at 13; Individual Mot. to Dismiss (doc. no. 9 in *Gipson II*) at 13.  The *Gipson II* complaint, however, alleges enough facts, taken as true, that it states a plausible claim, bearing in mind that a plaintiff need not plead a prima-facie case in his complaint.  *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 (2002).

As mentioned above, Gipson contends, among other things, that he has been constantly scrutinized in his work environment, cast in a false light by fabricated text messages, ostracized by co-workers, and subjected to comments that he will be fired and that his protective equipment is being tampered with.

This conduct could be sufficiently severe depending on context and the overall circumstances.  *Cf., e.g.,*

---

2.    Defendants also argue that Gipson does not "allege harassment based on a protected characteristic," but this goes to a claim of a discriminatory hostile work environment, which plaintiff abandoned, not a retaliatory hostile-work environment.

27

*Perry v. Rogers*, 627 F. App'x 823, 833-34 (11th Cir. 2015) (holding that a plaintiff's claim that "close monitoring and disciplinary decisions constituted an act of retaliation for filing her lawsuit" survived summary judgment because "a reasonable jury could conclude that [plaintiff] would not have been closely watched and then disciplined ... in the absence of her protected activity").

Further, as to liability, Gipson has alleged that Payne, Arkuszeski, and Wojciechowski were personally involved in at least some of the events about which he complains. He has also alleged that Payne and Arkuszeski supervised him. *See* Complaint (doc. no. 1) at 4 ¶ 19. As a result, Hyundai could be liable too. *See generally Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013) (discussing vicarious liability for employers based on harassment of employees by supervisors in the Title VII context); *see also Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509

F.3d 1344, 1347 n.1 (11th Cir. 2007) ("Both Title VII and § 1981 have the same requirements of proof and present the same analytical framework." (*citing Standard v. A.B.E.L. Services*, 161 F.3d 1318, 1330 (11th Cir.1998)).

As a result, the claims for retaliatory hostile-work environment under both Title VII (claim 16) and § 1981 will proceed (claim 17).

***

Accordingly, it is ORDERED that:

(1) The defendants' motions to dismiss (doc. nos. 7 & 9 in *Gipson II*) are granted in part and the following claims are dismissed: claim 1 (denial of access under § 1985), claim 2 (retaliatory termination under Title VII), claim 3 (same under § 1981), claim 4 (discriminatory termination under Title VII), claim 5 (same under § 1981), claim 6 (discriminatory wages under Title VII), claim 7 (discriminatory failure-to-promote under Title VII), claim 14

(discriminatory hostile-work environment under Title VII), and claim 15 (same under § 1981).

(2) Said motions are denied in part and the following claims are not dismissed and will proceed: claim 16 (retaliatory hostile-work environment under Title VII) and claim 17 (same under § 1981).

It is further ORDERED that, because the defendants did not move to dismiss the following claims, they will also proceed: claim 8 (discriminatory wages under § 1981), claim 9 (discriminatory failure-to-promote under § 1981), claim 10 (retaliatory wages under Title VII), claim 11 (retaliatory failure-to-promote under Title VII), claim 12 (retaliatory wages under § 1981), and claim 13 (retaliatory failure-to-promote under § 1981).

DONE, this the 17th day of March, 2020.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE